Syllabus.

𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

COLONA AND OTHERS V. PARKSLEY NATIONAL BANK AND OTHERS.

June 14, 1917.

Absent, Burks, J.*

1.  BILLS AND NOTES—*Endorsers—Evidence of Agreement Among Endorsers.*—A note was signed by a Farmers Mutual Exchange and appellants.  Appellants testified that they signed the note with the understanding that none of them should be liable until it was brought back to them for their endorsement, and that it was to be entirely optional with them to place their names on it or not, as they might finally prefer.  This testimony was objected to by the appellee, a bank, the holder of the note in due course, who under the evidence was warranted in treating appellants as endorsers.

    *Held:* The objection was well taken, as a holder of the note in due course could not be affected by such an understanding.

2.  BILLS AND NOTES—*Endorsers—Place of Signature.*—The endorsement, as its derivation and meaning would indicate, is generally made by writing the transferer's name on the back of the paper, but it may be written—although unusual and irregular—on any other portion of it, even on the face and under the maker's name.  The position of the signature of an endorser upon a negotiable note is not in itself conclusive of the purpose of the signature.  This is expressly recognized in section 2841-a, sub-section 17, clause 6, Code of 1904, which provides that where a signature is so placed upon an instrument that it is not clear in what capacity the person signing the same intended to sign, he is to be deemed as endorser.  Undoubtedly, the names of endorsers usually appear on the back of the paper, but they may appear elsewhere without offending against the regularity required by the negotiable instruments law.

3.  BILLS AND NOTES—*Regularity.*—Appellants were members of a Farmers Mutual Exchange.  Anticipating that the approaching crop season would call for money with which to handle the crops of its members, a committee was appointed to solicit

*Case submitted before Judge Burks took his seat.

endorsers for a loan. A note was prepared and sent out from the office of the Exchange. The body of the note and the signature of the Exchange appeared in type; then followed the names of twenty individual members (appellants), some immediately under the signature of the maker and some in another column to the left. It was contended that the note showed upon its face that it was invalid because it appeared to be signed by the Exchange and appellants as joint makers, payable to the order of themselves and not endorsed by them.

*Held:* That the substance and essence of the transaction as a whole did not, as against the bank, the holder in due course, justify this contention. The appellants manifestly did not at any time mean to become bound otherwise than as endorsers.

4. BILLS AND NOTES—*Liability of Maker.*—Those who execute negotiable paper and set it afloat are chargeable with a much higher degree of diligence and caution than those who purchase such paper in due course of commercial transactions.

5. BILLS AND NOTES—*Endorsement—Separate Paper.*—Where the maker of a note forwarded it to a bank accompanied by a letter, in which it was stated that the maker did assign and deposit the note as collateral security to secure the bank against any loss by overdraft of the maker, the signature of the maker to the letter of assignment was a sufficient endorsement under Code of 1904, section 2841-a, sub-section 31, which provides: "The endorsement must be written on the instrument itself or upon a paper attached thereto."

6. BILLS AND NOTES—*Assignment as Collateral—Holder in Due Course.*—The fact that the note was assigned as collateral security did not make the transfer any the less effective. It is settled in Virginia that such a transfer constitutes the transferee a holder in due course.

7. BILLS AND NOTES—*Assignment as Collateral—Deposit.*—Subsequent to the assignment of the note as security for overdrafts, the maker gave the bank written instructions to place the note to its credit.

*Held:* That this in no way invalidated the endorsement previously made by the assignment. The original endorsement completed the title of the bank as a *bona fide* holder of the note, and it was perfectly competent for the maker and the bank to thereafter agree to change the original purpose for which the transfer was made.

8. BILLS AND NOTES—*Negotiation of Demand Note—Reasonable Time.*—Code of 1904, section 2841-a, sub-section 53, provides that "when an instrument payable on demand is negotiated an unreasonable length of time after it is issued, the holder

is not deemed a holder in due course." What is a reasonable time for any purpose depends always upon the facts of the particular case. In the case at bar, a note dated August 24, 1911, payable on demand, was not discounted until October 31, 1911. The note was given in anticipation of its use to raise money for the purpose of handling the season's crops, when and as such use might be necessary.

*Held:* That there was no unreasonable delay in negotiating the note.

9. DOCUMENTARY EVIDENCE—*Bills and Notes—Action Against Endorsers.*—The minutes of the meetings of the board of directors of a Farmers Exchange, and copies of correspondence obtained from its files, relating directly or indirectly to the note in question, were admissible in an action against the endorsers, all of whom were either stockholders or directors of the Exchange.

10. CONFESSION OF JUDGMENT—*Warrant of Attorney.*—A warrant of attorney contained in a note did not designate the person in whose favor the judgment was to be confessed.

*Held:* A confession of judgment by an attorney under this warrant in favor of a bank, the holder of the note in due course, was valid, it appearing from the record and otherwise that before the judgment was taken the appellants all knew that the bank had the note, was looking to them for payment and had been notified by one of the endorsers to sue on the note.

Appeal from a decree of the Circuit Court of Accomac county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*S. J. Turlington* and *J. L. Jeffries,* for the appellants.

*Roy D. White, Stuart K. Powell* and *O. F. Mears,* for the appellees.

KELLY, J., delivered the opinion of the court.

This suit in equity was brought by G. W. Colona and nineteen others to cancel a judgment obtained against them

by confession, in favor of the Parksley National Bank. The lower court having heard the cause upon the bill and depositions and exhibits, entered the decree appealed from sustaining the validity of the judgment assailed and dismissing the bill.

The evidence is voluminous and upon some material points it is conflicting. We have endeavored, by a careful examination of the record, fairly to determine the essential facts, and these will appear in the course of this discussion.

The appellants, complainants below, were members of the Farmers Mutual Exchange of the Eastern Shore of Virginia, an incorporated association engaged in buying and selling potatoes in the counties of Accomac and Northampton. Anticipating that the approaching crop season in those counties would call for money with which to handle the crops of its members, the directors of the Exchange met on the 14th of June, 1911, and determined upon a general course of action, which found definite expression in the following extract from the minutes of that meeting: "A motion was made to appoint a committee to solicit endorsers for a loan, which was duly made and seconded and was carried. The chair appointed the following committee  *  *  On motion  *  *  the board resolved to borrow $40,000."

The plan adopted to raise this money contemplated that the Exchange should make five notes of $8,000 each, to be secured by the endorsement of the various members living in different sections of the two counties, and then to be offered to the local banks for discount. These notes were accordingly signed by the Exchange and placed in the hands of sundry members to solicit endorsers. The judgment in question was rendered upon one of these notes, which was placed in the hands of Mr. W. H. Matthews, a member of the board of directors, for the purpose of securing endorsers in the northern section of Accomac county. In stating that these notes were distributed for the purpose of secur-

ing endorsers, we use the latter term advisedly. In the face of the record it cannot be successfully denied, and we think it is not denied, that the original plan had in view notes to be made by the Exchange and endorsed by the members.

At another meeting of the directors, held some days later, the note in question, along with three others of like amount, was turned in to the board, the records of that meeting showing that "the report of the soliciting committee for endorsers was called for and four notes of $8,000 each were returned to the secretary with endorsers, with instructions to apply for loans on same." This particular note, and perhaps the others, was upon a typewritten form on which certain blanks as well as the names of all the endorsers were subsequently filled out with pen and ink. The note is copied here in full, the italics indicating the use of pen and ink, the balance of the paper showing the original type, with the signatures appearing in the same relative position as upon the original.

"No......... Exmore, Va. *Aug. 24th* 1911.
.. *$8000.00*
    Due *on demand*
    *On demand* after date *we* promise to pay to the order of *ourselves* the sum of Eight thousand (8000) dollars at
       *Parksley Nat'l Bank, Parksley, Va.*
value received, without offset.

"The maker and endorser each hereby waives the benefit of the homestead exemption, and all right of exemption from execution, as to the debt evidenced by this obligation, and if default be made in the payment hereof at maturity, hereby covenants to pay ten per cent. additional as collection fee; and hereby authorizes and empowers any attorney of record to confess judgment against *us* for the above sum and the costs of suit, with ten per cent. collection charges.

And we maker and endorser each hereby waives demand, protest and notice of non-payment hereof.

FARMERS MUTUAL EXCHANGE OF
EASTERN SHORE OF VA., INC.

*G. W. Colona*
*C. C. Tindall*
*L. B. West*
*J. W. Lankford*

*F. A. Shield, Treas.*
*W. H. Matthews*
*W. W. Kerns,*
*J. A. Bundick*
*D. W. Barnes*
*W. H. Wassels*
*T. H. Walker*
*L. S. Lankford*
*Jno. H. Bull*
*his*
*H. R. x Chase*
*mark*
*W. T. Bundick*
*J. F. Matthews*
*F. P. Matthews*
*O. W. Dunton*
*W. H. Ewall*
*G. M. Fisher*
*E. A. Ewall.*"

This note came to the hands of the bank in the manner hereinafter stated, and the Exchange realized thereon the full amount. Upon the 22nd day of January, 1912, no part of the note having been paid, the bank instituted an action thereon against the Exchange and all of the appellants, and upon the same day the judgment in question was confessed

103

in the clerk's office by an attorney of record. The process in this action was issued but not served, the endorsement thereon being as follows: "1912, Jan. 22—Bond and power of attorney filed and judgment confessed by Geo. L. Doughty, Jr., attorney of record, for debt, interest and costs at 11:30 a. m."

It is pertinent in this connection to state that shortly before the judgment was obtained, D. W. Barnes, one of the appellants, gave to the bank a notice in the following form: "As the holder of a certain negotiable promissory note, made and executed by the Farmers' Mutual Exchange, Incorporated, for the principal sum of eight thousand dollars ($8,000.00), payable on demand, which bears my endorsement, and upon which a right of action has accrued, you are hereby required forthwith to institute suit thereon for the collection of said note. This notice is given in accordance with section 2890 of the Code of Virginia, by me as an endorser on said note as aforesaid.

"Given under my hand this the 16th day of December, A. D. 1911."

Subsequent to the giving of this notice and before the judgment was taken, all of the appellants were called by the secretary of the Exchange to meet at the bank to consider some action in regard to the notes. An effort was at that time made to bring about some arrangement by which Barnes could be allowed to pay his share of the note and be released. This effort failed. Appellants claim that they knew nothing of the judgment until some time in the following summer. They did not bring the present suit until March, 1914, which was more than two years after the date of the judgment.

We may now take up the several grounds upon which the appellants ask us to reverse the decree under review, developing such further facts as may be important as we proceed.

A principal contention is that the note shows upon its face that it was invalid because it apeared to be signed by the Exchange and the appellants as joint makers, payable to the order of themselves and not endorsed by them. The substance and essence of the transaction as a whole does not, as against the bank, justify this contention. The appellants manifestly did not intend, at any time, to become bound otherwise than as endorsers. The conclusion is irresistible from the record that the general scheme was for the Exchange to make all of these notes as principal and have them secured by individual endorsement. It is quite true that the appellants testify most emphatically that they signed the note with the understanding that none of them should be liable until it was brought back to them for their endorsement, and that it was to be entirely optional with them to place their names on it or not, as they might finally prefer. Their testimony offered in proof of this remarkable and altogether unique arrangement was objected to by counsel for the bank, and we think the objection was well taken, because as we shall see, the bank was warranted in treating them as endorsers and, becoming the holder of the note in due course, it could not be affected by the understanding here set up as a defense.

After the note was returned to the Exchange, as above detailed, it was forwarded to the bank with a paper attached thereto in the following words (Italics added):
"Exmore, Va.

"August 24th, 1911:

"To secure the Parksley National Bank of Parksley, Va., against any loss through or by the overdraft the said bank was allowing this Farmers' Mutual Exchange of the Eastern Shore of Virginia, Inc., of Exmore, Va., *we do hereby assign to and deposit with the said bank, the note for eight thousand dollars, which is executed by ourselves to our order and bears the endorsements of G. W. Colona, C. C.*

*Tyndall, L. B. West, J. W. Lankford, W. H. Matthews, W. W. Kerns and fourteen others,* the said note being dated this day and made payable on demand, and the said note is appended hereto, as collateral security against such loss by the said bank. It is understood that when our account with the said Parksley National Bank is satisfactorily closed that this security is to again pass into our possession from the said bank and the receipt we hold for same be surrendered to the said bank.

"FARMERS' MUTUAL EXCHANGE OF
EASTERN SHORE OF VA., INC.
F. A. SHIELD, Secretary and Treasurer."

The letter to the bank from the Exchange which accompanied the note and assignment stated that the note was intended as collateral to secure an overdraft, but later in the same day another letter requested, in effect, that the paper be discounted and placed to the credit of the Exchange. This was done, and the fact that the Exchange got the full benefit of the proceeds is not questioned.

Under section 2841-a of the Code of Virginia, sub-section 52, "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face. 2. That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact. 3. That he took it in good faith and for value. 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The only condition of the section just quoted under which there can be any plausible question made regarding the situation of the bank as a holder in due course, is the first, namely, that the note must be complete and regular upon its face. It is urged upon us that the position of the signa--

tures shows that the appellants were joint makers with the Exchange, and, therefore, that the note appeared to be incomplete without their endorsement. This contention ignores three important considerations: First, that appellants themselves never at any time contemplated becoming bound otherwise than as endorsers; second, that the Exchange, which was known to be, in a measure, representing them, and which they had placed in a position to negotiate the note, described them in the assignment as endorsers; and, third, that the position of the signature of an endorser upon a negotiable note is not in itself conclusive of the purpose of the signature. The latter proposition is expressly recognized in section 2841-a, sub-section 17, clause 6, which provides that where a signature is so placed upon an instrument that it is not clear in what capacity the person signing the same intended to sign, he is to be deemed as endorser. Undoubtedly, the names of endorsers usually appear on the back of the paper, but they may appear elsewhere without offending against the regularity required by the negotiable instruments law.

"The endoresement, as its derivation and meaning would indicate, is generally made by writing the transferer's name on the back of the paper, but it may be written—although unusual and irregular—on any other portion of it, even on the face and under the maker's name. As said by Lord Campbell, C. J.: 'It is quite immaterial whether the endorsement be written on the back of the instrument or on the face.' Where the payee's name was endorsed in the usual place on the back of the note, and another endorsed it, writing his name at the other end with his signature reversed, it was considered irregular, but valid and in the course of business." 1 Daniel Neg. Instr. (6th ed.) sec. 688. See also Bigelow on Bills & Notes, (2d ed.) p. 83; *Shain* v. *Sullivan,* 106 Cal. 208, 210, 39 Pac. 606, 7 Cyc. 793; 8 Corpus Juris. 350, 351.

Here was a note evidently prepared and sent out from the office of the Exchange, with the body of the note and signature of the Exchange appearing in type; then followed the names of twenty individual members, some immediately under the signature of the maker and some in another column to the left. The bank knew of the original plan under which the note was to be issued, and it was natural, therefore, that when the cashier examined the note, as he says he did, most carefully, he should have treated it as having been made by the corporation and endorsed by the individuals. He testifies that from the manner in which the names were written thereon, taken with the language of the annexed assignment and his knowledge that the notes of this series had been carried around for the endorsements, he construed the words "to the order of ourselves" to refer to the Exchange, and regarded the individuals as endorsers. This conclusion was warranted by the facts and the form of the note when viewed in the light of the wise and just rule that, "those who execute negotiable paper and set it afloat are chargeable with a much higher degree of diligence and caution than those who purchase such paper in due course of commercial transactions." *Fleshman* v. *Bibb,* 118 Va. 582, 88 S. E. 64; *Vaughan* v. *Johnson,* 20 Idaho 669, 119 Pac. 879, 37 L. R. A. (N. S.) 816, 818.

It is insisted, however, that if the Exchange was in fact the maker and appellants merely endorsers, there was never any valid endorsement of the note by the Exchange itself. There is, we think, no merit in this contention. The name of the Exchange appears only once on the note, but its signature to the assignment attached thereto was a sufficient endorsement. "The endorsement must be written on the instrument itself or upon a paper attached thereto." Code, sec. 2841-a, sub-sec. 31.

In the case of *Thorpe* v. *Mindeman,* 123 Wis. 149, 101 N. W. 417, 68 L. R. A. 146, 107 Am. St. Rep. 1012, the court,

after referring to several Wisconsin cases, says: "In all of these cases a negotiable note was transferred by attaching it to a negotiable bond which recited that the note was thereby 'assigned and transferred' to the holder of the bond as security for the payment of the bond, there being no endorsement on the note itself; and this was held an endorsement within the law merchant." See also 1 Daniel Neg. Inst. (6th ed.) section 688-c and note; 3 R. C. L., p. 969, section 178; *Herring* v. *Woodhull,* 29 Ill. 92, 81 Am. Dec. 296, 298.

The fact that the note was assigned as collateral security did not make the transfer any the less effective. It is settled in Virginia that such a transfer constitutes the transferree a holder in due course. *Anderson* v. *Union Bank,* 117 Va. 1, 5, 83 S. E. 1080.

Nor do we think the fact that subsequent to the assignment of the note as security for the overdraft the Exchange gave the bank written instructions to place the note to the credit of the former in any way invalidated the endorsement previously made by the assignment. The original endorsement completed the title of the bank as a *bona fide* holder of the note, and it was perfectly competent for the Exchange and the bank to thereafter agree to change the original purpose for which the transfer was made. So far as the appellants are concerned, they became bound by their signatures before there was any negotiation of the paper, and its use by the Exchange, either as collateral security, or by way of discount and credit, was directly in furtherance of the purpose for which the note was made, was in keeping with the course of commercial business, and could not operate to the prejudice of appellants in any such way as to give them the right to complain.

We have not overlooked the contention of the appellants that a Mr. Chandler, who was the president of the bank and also the general manager of the Exchange, had notice of the

alleged arrangement and understanding by virtue of which appellants claim they were not to be bound without their re-endorsement; but in our opinion the evidence is insufficient to sustain that contention. The evidence tending to show such notice on the part of Mr. Chandler is exceedingly meagre, and on the other hand his testimony is positive and emphatic to the effect that he was not aware of any defect or infirmity in the paper.

It is further insisted that as the note was dated August 24, 1911, payable on demand, and not discounted until October 31, 1911, the bank is precluded from claiming to be a holder in due course by virtue of sub-section 53 of section 2841-a of the Code, which provides that, "when an instrument payable on demand is negotiated an unreasonable length of time after it is issued, the holder is not deemed a holder in due course." What is a reasonable time for any purpose depends always upon the facts of the particular case. This familiar proposition is directly recognized by sub-section 193 of section 2841-a, wherein it is declared that, "in determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case." In the present instance we have no difficulty in deciding that there was no unreasonable delay in negotiating the note. All of the notes of the series were given in anticipation of their use by the Exchange to raise money for the purpose of handling the season's crops, when and as such use might be necessary.

Another ground of error relied upon is the action of the court in admitting in evidence the minutes of the meetings of the board of directors of the Exchange, and copies of certain correspondence obtained from its files, relating either directly or indirectly to the note in question. Without going into the particulars of each item of proof here chal-

lenged, we deem it sufficient to say that they were all ger-
mane to the controversy and proper evidence against the
appellants. Five of the appellants were directors; four of
these were present at the first and five at the second of the
two meetings from the minutes of which the extracts in
question were taken. Every one of appellants was either a
stockholder or director of the Exchange. W. H. Matthews,
who was mainly instrumental in procuring the endorse-
ments and who delivered the note with the signatures of
the individuals to the Exchange to be held until its use was
needed, was himself one of the directors. There is, we
think, no just ground upon which the correspondence and
minutes objected to could have been excluded.

We pass now to the consideration of another assignment
of error upon which the appellants apparently place great
reliance. It is claimed that the judgment on the note was
void because the attorney who confessed it had no power
to do so. The argument is that the warrant of attorney con-
tained in the note did not designate the person in whose
favor the judgment was to be confessed.

It is generally held that a warrant of attorney must be
strictly construed. The case of *Spencer* v. *Emerine*, 46
Ohio St. 433, 21 N. E. 866, 15 Am. St. Rep. 634, cited
by appellants, carried this rule to the extent claimed for
it in the instant case: and other authorities referred to
by them, while not so directly in point, tend strongly to
sustain their contention. We are not disposed, however,
to go as far in applying the rule of strict construction
to warrants of attorney as these authorities have gone.
The question is an open one in this jurisdiction. Limiting
our decision to the facts of this particular case, we are of
opinion that the court did not err in giving effect to the
judgment by confession. Such judgments, in general, are
not contrary to the policy of this State (*Valley of Virginia
Ins. Co.* v. *Barley's Admr.*, 16 Gratt. [57 Va.] 363), nor to

104

the terms of the negotiable instruments law (Code, section 2841-a, sub-sec. 5). Having decided that the bank was the holder of this note in due course, and finding from the allegations in the bill and otherwise from the record that before the judgment was taken the appellants all knew that the bank had the note, was looking to them for payment and had been notified by one of the endorsers to sue on the note, we are of opinion that the warrant of attorney, as used in this case, was a just and lawful exercise of the power conferred by the note.

In the case of *Fritz* v. *Horten* (Pa. 1914), 243 Pa. 187, 90 Atl. 58, the court used the following language in the course of its opinion, which we think is applicable to the case at bar: "No question was raised in the common pleas or here as to the form of the action. But it is contended that the form is a mere fiction in law and that Ella M. Fitz was the real plaintiff. If regarded in that light, she was the owner of a bond made expressly payable to an assignee and which contained a warrant of attorney not limited to a confession of judgment in favor of the obligee, but general in its terms. The warrant was given in aid of the collection of the debt, and, being unrestricted, the only reasonable implication is that it was meant to be as broad as the obligation of the bond, and extended to the owner thereof by assignment. This construction is not in violation of the rule that in entering judgment on a warrant of attorney the authority given by it must be strictly pursued."

It follows from what has been said that in our opinion the judgment was valid, and it is, therefore, not necessary to consider the effect upon the rights of the appellants of their delay of nearly two years after they knew of the fact that the judgment had been taken.

There is no error in the decree complained of, and it is affirmed.

*Affirmed.*