## Staunton

ANNIE T. FARMER AND D. S. FARMER v. A. D. FARMER, ANCILLARY ADMINISTRATOR OF THE ESTATE OF P. W. FARMER, DECEASED.

September 10, 1953.

Record No. 4075.

Present, All the Justices.

The opinion states the case.

*James S. Easley* and *William H. King*, for the appellants.

*Frank L. McKinney*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

A. D. Farmer, ancillary administrator of the estate of P. W. Farmer, deceased, filed a bill against Annie T. Farmer and D. S. Farmer, hereinafter referred to as the defendants, praying that the court ascertain and declare the binding validity of a promissory note in the principal sum of $12,000, made by the defendants on June 10, 1947, and delivered to and owned by P. W. Farmer at the time of his death. The defendants filed their answer alleging that during his lifetime P. W. Farmer, the holder of the note, in compliance with Code, § 6-475, had voluntarily renounced his rights under the note and canceled it by a signed notation endorsed thereon terminating the defendants' obligation on the holder's death.

After hearing the testimony *ore tenus* the lower court decreed that the endorsement on the note was insufficient to constitute a compliance with Code, § 6-475, and that the indebtedness evidenced by the instrument was a valid and enforceable obligation of the defendants to the estate of P. W. Farmer, deceased. From that decree the present appeal has been taken.

There is no serious conflict in the evidence, which discloses these facts: On June 10, 1947, P. W. Farmer, an elderly resident of Halifax county, Virginia, conveyed a parcel of land to the defendants, his nephew, D. S. Farmer, and the latter's wife, Annie T. Farmer, for the agreed price

of $12,000, taking from the defendants their promissory note for that amount, bearing the same date, and carrying interest at the rate of six per cent per annum, payable in fifteen annual installments of $800 each beginning on June 10, 1948, and secured by deed of trust on the property. Inadvertently the note was made payable to the "Bank of Halifax," but it is agreed that P. W. Farmer should have been named as the payee. According to the terms of the note, upon default in the payment of any installment the remaining unpaid balance would immediately become due and payable. During this transaction P. W. Farmer told the defendants that he would see to it that the payment of their obligation would not be made difficult.

Prior to May, 1948, the president of Elon College had solicited P. W. Farmer to make a will conveying his entire estate to the college. Farmer told Annie T. Farmer of this solicitation and she suggested that at his death he give to her and her husband the property which they had purchased from him and on which there was the outstanding deed of trust indebtedness held by him. Farmer told her that he would think about the matter. A few weeks later he told her that he had decided to effect this by a notation on the deed of trust or note and suggested that they consult Don P. Bagwell, a member of the South Boston bar, as to how it should be done. Together they went to the office of Bagwell who told Farmer that his wishes could be effected by making a proper notation on the note. Since, however, Farmer did not have the note with him, Bagwell wrote out the form of the notation and told Farmer to write it on the back of the note. Upon returning home Farmer, in the presence of Annie T. Farmer and her son, wrote on the note, in his own handwriting, this notation which had been suggested by Bagwell:

"At death this note is to be cancelled and not to be collected.

"5/1/48                               (signed) P. W. Farmer"

A month or so later Farmer looked for the note but was unable to find it and requested that his nephew and the latter's wife assist him in locating it. Their joint efforts to find the note were not immediately successful and P. W. Farmer, in the presence of D. S. Farmer, his nephew, wrote in his own handwriting the following notation at the bottom of the first page of the deed of trust.

"At my Death this Deed of Trust is to cancel and Note not collected.

"Sept. 2, 1948                    (signed) P. W. Farmer"

A few days later P. W. Farmer found the note and delivered it to Annie T. Farmer for safekeeping for him. Subsequently, P. W. Farmer, being in declining health, left Halifax county, Virginia, and established his residence with his nephew, W. S. Cook, at Summerville, South Carolina, and remained there until he died on September 1, 1949. In the latter part of August, Cook, who was endeavoring to straighten out his uncle's affairs, wrote Annie T. Farmer requesting that she return the note to him, and she did so by a letter dated September 1, 1949, the day on which P. W. Farmer died, but mailed the next day.

In the meantime a payment of $250 on June 11, 1947, and another of $1,000 on March 4, 1948, had been made and credited on the back of the note. The installment due June 10, 1949, has not been paid.

Shortly after Farmer's death Cook qualified as administrator in South Carolina where the estate is being administered, and A. D. Farmer qualified as ancillary administrator in Halifax County, Virginia.

In its written opinion the trial court held that the notation on the note was "not a renunciation, but is testamentary in character, and was intended as a directive to his personal representative." Moreover, it held that the transaction did not meet the requirements of "a gift *inter vivos*, because it was not intended to take effect *in praesenti.*" The main argument in the brief on behalf of the ancillary administrator is in support of these holdings.

This reasoning overlooks the principal issue in the case. We are not concerned with whether the notations are "testamentary in character," or whether the transaction meets the requirements of a valid gift *inter vivos* by the holder to the makers of the balance due on the holder's death. The simple issue is whether the notations on the note and the deed of trust, or either of them, satisfy the requirements of Code, § 6-475, so as to constitute a renunciation by the holder of his rights against the makers. That section reads:

"*Renunciation by holder.*—The holder may expressly renounce his rights against any party to the instrument before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon."

The section, which is in the precise language of section 122 of the Uniform Negotiable Instruments Act, is found in chapter 10 of the 1950 Code of Virginia, wherein our negotiable instruments statutes are embodied. The statute relates solely to the renunciation of the rights of a holder of a negotiable instrument and is complete and self-executing. It provides a method whereby the holder of a negotiable instrument may renounce his rights against any party to the instrument and effect its discharge, save as to a holder in due course without notice.

The first sentence provides for the renunciation of the holder's rights against "any party" to the instrument, which may be effected "before, at, or after its maturity." To accomplish this the holder must merely "expressly renounce" such rights.

The second sentence is not in conflict with the first, but provides that the "instrument" is discharged by "an absolute and unconditional renunciation" of the holder's rights "against the principal debtor made at or after the maturity of the instrument."

Under the statute the necessary requirements of an effective renunciation are: (1) The holder must "expressly renounce" his rights, as stated in the first sentence; and (2) The renunciation "must be in writing unless the instrument is delivered up to the person primarily liable thereon," as embodied in the last sentence. Under the second sentence, a discharge of the instrument is effected by "an absolute and unconditional renunciation" of the holder's rights against the principal debtor made "at or after the maturity of the instrument." In the third sentence is the qualification that "a renunciation does not affect the rights of a holder in due course without notice."

There is no requirement that a renunciation must be made effective immediately, or provision that it cannot be made effective at a future time, or after the death of the holder of the instrument. Nor is there any requirement that a renunciation without consideration must meet the essentials of a gift *inter vivos*. There is nothing in the language used to suggest that a written renunciation may not be in the form of a will, or that if "testamentary in character," but not properly executed as a will, it must be cast aside as not constituting a valid renunciation.

The form of a written renunciation is not embodied in the statute, nor does it define the word "renounce;" hence we must give the word its ordinary meaning. According to Webster's New International Dictionary to "renounce" means: "To announce one's abandonment of the ownership of; to give up, abandon, or resign, usually formally (something possessed); as to *renounce* a title, a claim."

When we examine the writings or notations with which we are here concerned in the light of the circumstances under which they were made, we are of opinion that they clearly meet the requirements of the first sentence of the statute. The holder of the note indicated to Mrs. Farmer, one of the makers, his desire to relieve her and her husband, the comaker, of the obligation to pay such balance as might be due on the note at the holder's death. Having made up his mind to do this he consulted his counsel as to

the manner in which it could be accomplished. Following the advice of his counsel, in the presence of one of the makers, he wrote on the back of the note "At death this note is to be cancelled and not to be collected." In this manner he did "expressly renounce" his rights against the makers of the note effective at a future date, but upon the happening of his death, an event which was bound to occur. It was an express present renunciation of the holder's right to claim whatever balance might be due on the note at the date of the holder's death.

Not only does this notation satisfy the requirement of the statute that the renunciation be in writing, but it was placed on the back of the note where the person who might come into possession of the instrument was bound to see the evidence of renunciation. Some months later after he had misplaced the note, and fearful of the consequences of its loss, Farmer again evinced his purpose by a like notation on the deed of trust.

It is argued that the notations here do not constitute an effective renunciation under the statute, because at any time before his death the holder might have changed his mind and canceled either or both of them. There are two ready answers to this argument. In the first place, no question of the cancellation of the renunciation is here involved. The admitted fact is that the holder made no attempt to cancel the renunciation, or ever expressed an intent or desire to do so. Indeed, he delivered the note carrying the notation to Mrs. Farmer, one of the makers, and allowed her to retain it up to the time of his death, thus precluding an erasure or cancellation by him of the evidence of the renunciation.

In the next place, assuming that a valid renunciation once made may be canceled, any written renunciation, whether effective immediately or in the future, would be subject to the same infirmity so long as the holder retained possession of the note and the evidence of renunciation. Hence, the possibility of cancellation is not a determinative factor in ascertaining the validity of a renunciation effective at a future date.

Although a similar statute has been adopted by all of the States, there are few decisions as to the essential requirements of a renunciation. We have been pointed to no authority, nor have we been able to find any, which holds, as the administrator contends, that a renunciation under the statute may not be made effective at a future date. Indeed, such decisions as we have been able to find uphold renunciations of this character.

*New York, New Haven, etc. R. Co.* v. *Reconstruction Finance Corp.*, 2 Cir. (1950), 180 F. (2d) 241, involved the question as to whether a letter written by Jesse H. Jones, Chairman of the Reconstruction Finance Corporation, to the trustees of the New York, New Haven & Hartford Railroad Company constituted a valid renunciation under a statute phrased in the precise language of our Code, § 6-475. In the letter Jones wrote the trustees that if they paid all of their notes held by the Reconstruction Finance Corporation as they fell due, the corporation would accept four per cent interest thereon despite the fact that the notes called for five per cent. Several years later the railroad company paid the notes in full with interest at the rate of five per cent and brought action against the Reconstruction Finance Corporation to recover the excess over four per cent, contending that Jones' letter constituted an effective renunciation of the rights of the corporation to recover on the notes in accordance with their terms. The Court of Appeals, in an opinion by the eminent Judge Learned Hand, held that the letter constituted a valid renunciation under the first sentence of the statute, although the renunciation was conditioned upon the happening of a future event which was not satisfied for a period of several years. The opinion pointed out that there was no requirement in the first sentence of the statute that the renunciation be unconditional, and that upon the happening of the stipulated event it became effective and entitled the railroad company to recover the excess interest which it had paid.

Judge Hand cited with approval both the reasoning and conclusion in *Dickinson* v. *Vail* (1918), 199 Mo. App. 458,

203 S. W. 635, in which Dickinson, the holder of a negotiable instrument, had entered into a written understanding with Vail, a comaker, that as Vail had paid a portion of the principal he would be relieved from further obligation if Dickinson successfully sued the other maker. Dickinson did sue the other maker, but through his own carelessness was unsuccessful and then sought to recover from Vail on the ground that the agreement was not binding. The court held, however, that the agreement was binding as a renunciation based on the happening of a future event which had occurred.

Quite pertinent to the present case is the further holding in *Dickinson* v. *Vail, supra,* that the holder of a note may effectually renounce his rights to a part of a claim as well as the whole.

In its written opinion the trial court relied upon the decision in *Leask* v. *Dew* (1905), 102 App. Div. 529, 92 N. Y. S. 891 (affirmed 184 N. Y. 599, 77 N. E. 1190), where the holder of a note left among his papers a letter addressed to his executors in which he said that it was his "wish" that a note in his possession should be "cancelled in case of my death, and, if the law does not allow it I wish you to notify my heirs that it is my wish and order." It was held that this was merely an expression of the holder's "wish" and not an "express renunciation" within the meaning of the statute. In the present case there was an express renunciation and not the mere expression of a "wish."

The trial court also relied upon *Daugherty* v. *Preuitt* (1925), 113 Okl. 66, 242 P. 529, in which the court construed this notation on certain notes: "If the payee of this note does not survive the maker thereof, then this note is not to be paid but is to be cancelled and surrendered." It was held that this was a conditional renunciation and, therefore, not effective. That holding is, we think, entirely discredited by the reasoning of Judge Hand in *New York, New Haven, etc. R. Co.* v. *Reconstruction Finance Corp., supra,* decided twenty-five years later, that under the first

sentence of the statute a valid renunciation may be conditional.

The case of *Dimon* v. *Keery* (1900), 54 App. Div. 318, 66 N. Y. S. 817, was also cited by the trial court. That case involved a notation written by the holder on a note that "At my death the above note becomes null and void." It was held that the notation was ineffective because it was not a gift *in praesenti*, and, since a consideration was lacking, it could not be sustained as a valid contract. Whether the notation constituted a valid renunciation was not raised or discussed.

We are of opinion that the notations on the note and deed of trust constitute a valid renunciation by P. W. Farmer, the holder, of his rights against the defendants under the note, and that, therefore, the note is not a valid and enforceable obligation of the defendants.

Accordingly, the decree is reversed and the cause remanded for the entry of a proper decree.

*Reversed and remanded.*