## Richmond

#### First & Citizens National Bank, Alexandria, Virginia, Successor, Etc. v. Federal Deposit Insurance Corporation, Etc.

January 19, 1970.

Record No. 7029.

Present, All the Justices.

*Herbert H. Bateman* (*Jones, Blechman, Woltz & Kelly*, on brief), for plaintiff in error.

*Daniel W. Wilkinson, Jr. (West & Wilkinson,* on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

First & Citizens National Bank, Alexandria, Virginia, plaintiff, successor by merger to Shirlington Trust Company, Incorporated (Shirlington), instituted this action against the Federal Deposit Insurance Corporation (FDIC) in its own right and as receiver for Crown Savings Bank (Crown) to recover on two time certificates of deposit issued by Crown.

Plaintiff alleged that the certificates of deposit were pledged as collateral security on a promissory note made by Andrew Goldberg, bearing date of April 15, 1963, payable on demand to the order of Shirlington in the amount of $35,000; that Goldberg had defaulted on the payment of the loan; and that FDIC had refused to honor the certificates. Trial by jury was waived and the trial court, after hearing the evidence and argument of counsel, held that Shirlington had released its claim on certificate of deposit No. A-305, and that certificate of deposit No. A-328 was not supported by lawful consideration when issued. Judgment was entered for the defendant, and plaintiff is here on a writ of error.

The evidence shows that the $35,000 loan obtained by Goldberg from Shirlington was first secured by a certificate of deposit issued by Crown to Goldberg as payee. Ultimately certificate of deposit No. A-305 was delivered to the plaintiff as prior certificates being used as collateral matured. This certificate was issued by Crown on April 11, 1964, in the amount of $35,000, payable to Goldberg six months after date.

In September 1964, after Crown was placed in receivership, Shirlington inquired of the FDIC as to the status of certificate No. A-305 and was informed by the attorney for the receiver that the FDIC did not at that time contemplate paying the certificate as an insured deposit, but that Shirlington could file a general proof of claim. On September 17, 1964, Shirlington filed its proof of claim with John J. Slocum, liquidator for the receiver, attaching certificate No. A-305 thereto.

Sometime after October 17, 1964, Goldberg delivered to Shirlington as additional security on his loan certificate No. A-328, issued by Crown on June 26, 1964, in the amount of $30,000, payable to

Weyman C. Lunsford, Jr., three months after date. The certificate was indorsed by Lunsford and Goldberg without recourse.

On December 29, 1964, Charles R. Hohein, senior vice-president and treasurer of Shirlington, at the direction of the president of the bank, who had consulted with the chairman of the bank's board of directors and its executive vice-president, wrote a letter to Slocum, the pertinent parts of which are as follows:

"It is our desire to relinquish our claim against the certificate [A-305], and therefore request that you surrender the instrument to Mr. Goldberg upon presentation of the carbon copy of this letter.

"On December 14, 1964, we forwarded to you a photo of Time Certificate of Deposit # A 328 * * * requesting information pertaining to the exchange of one certificate for the other."

On April 5, 1965, Goldberg and Frank Ball, chairman of the board and attorney for Shirlington, visited Slocum at his office in Newport News, and Ball requested that certificate A-305 be returned to his bank. Slocum refused the request, stating that Hohein's letter had released the bank's claim, and that the certificate was being used to off-set two loans made to Goldberg by Crown.

On April 30, 1965, Ball wrote Slocum:

" * * * I am sorry that I made the mistake of having this claim [on certificate No. A-328] placed on Certificate A-305 which was issued in the name of Andrew Goldberg and released to you by Mr. Hohein by his letter dated December 29, 1964."

Hohein testified, over objection of the defendant, that his letter of December 29 was not intended as a release of the bank's claim on certificate No. A-305 unless it was delivered to Goldberg. His purpose in writing the letter was to have the certificate delivered to Goldberg, who could then negotiate with Slocum for the release of certain collateral held by Crown on loans made to Goldberg. The release of this collateral would enable Goldberg to furnish additional collateral for his $35,000 loan with Shirlington.

Certificate No. A-328, made payable by Crown to Weyman C. Lunsford, Jr., as payee, was delivered to Lunsford by Alvin Townsend, sole stockholder of The Citizens Bank of Stockbridge, Geor-

gia. Townsend obtained the certificate under the following circumstances: On June 26, 1964, Crown discounted for Townsend a number of notes for the sum of $134,250, among which was a note of Lunsford's for $30,000. The entire amount was credited to the account of The Citizens Bank of Stockbridge, and at Townsend's direction Crown issued and delivered to Townsend several certificates of deposit, totaling $135,000, one of which was certificate No. A-328. The Stockbridge account was debited $135,000 and written notification was sent to Townsend. Approximately one month after the issuance of the certificates of deposit the Lunsford note at Crown was credited with a payment of $26,000 by debiting the Bank of Stockbridge account in that amount. Sometime later, however, it was discovered that at the time of this debit the bank's account with Crown was already overdrawn by some $234,000.

Lunsford pledged certificate No. A-328 as collateral security on a loan made to him by Citizens National Bank of Sandy Springs, Georgia, and upon payment of the loan the certificate was released to him by the bank on October 17, 1964. Sometime thereafter the certificate came into the possession of Goldberg, and he delivered it to Shirlington as additional collateral on his loan.

## I.

### Certificate of Deposit No. A-305

Plaintiff contends that Hohein's letter of December 29, 1964, was ambiguous and that it was not an effective present release of its claim to certificate No. A-305; that Hohein had no authority to release the bank's collateral; and that the release was ineffective because it was not supported by consideration.

Section 6-475, Code of 1950 (Negotiable Instruments Law[1] § 122) deals with the renunciation of rights in a negotiable instrument. It provides as follows:

"The holder may expressly renounce his rights against any party to the instrument before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the

---

1. Uniform Commercial Code became effective on January 1, 1966. It applies to transactions entered into and events occurring after that date. Acts of Assembly, 1964, Ch. 219, pp. 293, 410.

instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon."

The language of the letter of December 29 is clear and unambiguous. It expressly renounces plaintiff's rights to the certificate of deposit, and it is not conditioned upon the delivery of the certificate to Goldberg. It is true that Hohein used the language, "It is our desire to relinquish our claim," but the word "desire," as used in the context and circumstances here, clearly shows an expression of present purpose and intent to renounce plaintiff's rights rather than an indication of some possible contemplated action at a future time. See, 12 Words & Phrases, Desire, pp. 428, 431, 432, cumulative pocket part pp. 32, 33. *Cf., Farmer v. Farmer*, 195 Va. 92, 97, 98, 77 S.E.2d 415, 419 (1953).

■ The principle[2] that an officer of a bank has no inherent authority to impair its security or collateral has no application under the facts in the present case. The plaintiff produced no evidence to show that the bank's president, the executive vice-president, the chairman of its board of directors, and Hohein, acting alone or together, were not authorized to release the certificate.

Consideration for the voluntary renunciation by Shirlington of its rights in the certificate was not required under Code § 6-475 (NIL § 122). 11 Am.Jur.2d, Bills and Notes, § 949, pp. 999, 1000; Annot., "Bill or Note—Renunciation of Rights," 65 A.L.R. 2d 593, 601-604.

## II.

### *Certificate of Deposit No. A-328*

■ Plaintiff concedes that it is not a holder in due course of certificate No. A-328 in its own right, it having taken the certificate after maturity. It contends, however, (1) that it succeeded to all of the rights of Lunsford, who was a holder in due course, by virtue of the chain of indorsements to it; and (2) that, if it was not a holder in due course, it was a holder for value and the certificate was not subject to the personal defense of a set-off that Crown might have against Lunsford.

2. 10 Am. Jur. 2d, Banks, § 103, pp. 106, 107, § 106, p. 109.

On the other hand, the FDIC says that Lunsford was not a holder in due course because (1) he did not take the certificate in good faith and for value; and (2) it was not negotiated to him, he having taken the certificate of deposit directly from Crown.

Section 6-404, Code of 1950 (NIL § 52) provides that:

"A holder in due course is a holder who has taken the instrument under the following conditions:

(1) That it is complete and regular upon its face;
(2) That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact;
(3) That he took it in good faith and for value;
(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 6-410, Code of 1950 (NIL § 58) provides that:

"In the hands of any holder other than a holder in due course a negotiable instrument is subject to the same defense as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

Section 6-376, Code of 1950 (NIL § 24) provides that every negotiable instrument is deemed prima facie to have been issued for a valuable consideration and every person whose signature appears thereon to have been a party thereto for value.

Section 6-382, Code of 1950 (NIL § 30) provides that:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

We agree with plaintiff that it was not a holder in due course of certificate No. A-328 in its own right but that it succeeded to the

rights of Lunsford, who was a holder in due course, by virtue of the indorsements of Lunsford and Goldberg. The certificate was complete and regular on its face when it came into the hands of Lunsford as payee and it was not at that time overdue. There was a presumption that Lunsford took it in good faith and for value. Indeed there is no evidence in the record rebutting that presumption. The certificate was made payable to Lunsford by Crown at Townsend's direction. It was delivered by Crown to Townsend, who in turn delivered it to Lunsford. There is no evidence in the record that when Lunsford received the certificate from Townsend he had any notice of any infirmity in the instrument or any defect in Townsend's title.

When an instrument is transferred to the named payee by a third person after the issuance of the obligation, a negotiation takes place within the meaning of Code § 6-382. The last sentence of the section states that if an instrument is payable to bearer it is negotiated by delivery, and if payable to order it is negotiated by the indorsement of the holder completed by delivery. But these are not the exclusive methods by which an instrument may be negotiated. A negotiable instrument, payable to a named payee, is negotiated when the physical possession of it is handed for value to the person named. *National Bank of Suffolk* v. *American Bank & Trust Co.*, 163 Va. 710, 719-723, 177 S.E. 229, 232, 234, 97 A.L.R. 1205 (1934). See also Annot., 2 A.L.R.3d 1151, 1156-1167.

The evidence in the record before us shows that Lunsford met all the requirements of a holder in due course, and since the plaintiff derived its title through Lunsford it succeeded to all Lunsford's rights in the certificate.

We also agree with the plaintiff that even if it was not a holder in due course, it was a bona fide purchaser for value, and under the language of Code § 6-410 the certificate would not be subject to the personal defense of set-off that Crown had against Lunsford for non-payment of his promissory note which was discounted by Townsend.

In *Stegal* v. *Union Bank, Etc., Trust Co.*, 163 Va. 417, 460, 176 S.E. 438, 456, 95 A.L.R. 582 (1934), we held that:

" * * * Under the law as it stands in Virginia, a post-maturity transferee of a negotiable note, who is a *bona fide* purchaser for value thereof from the payee, takes the instrument free and clear of any mere set-off which the maker has against the payee at the time of

the transfer, and, of course, free of any that the maker may thereafter acquire."

We hold that the plaintiff renounced its rights to certificate No. A-305, but that it is entitled to recover on certificate No. A-328. Accordingly, the judgment is affirmed in part and reversed in part, and remanded to the court below for entry of a judgment in favor of the plaintiff on certificate No. A-328 against the FDIC, in its own right and as receiver for Crown, in the amount the trial court may ascertain it is entitled to receive under the liquidation of Crown.

*Affirmed in part; reversed in part; and remanded.*