**OLSEN–FRANKMAN LIVESTOCK MARKETING SERVICE, INC., Appellant,**

v.

**CITIZENS NATIONAL BANK OF MADELIA, a corporation, Appellee, John Keim, d/b/a John Keim & Sons.**

No. 79–1080.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1979.

Decided Sept. 26, 1979.

Gale E. Fisher, May, Johnson, Doyle, Becker & Fisher, Sioux Falls, S. D., for appellant; Grose, Von Holtum, Von Holtum, Sieben & Schmidt, Worthington, Minn., on brief.

Robert M. Halvorson, Gislason, Dosland, Malecki, Gislason & Halvorson, New Ulm, Minn., for appellee.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

 Appellant Olsen-Frankman Livestock Marketing Service, Inc. (Olsen-Frankman), a livestock commission company operating in Sioux Falls, South Dakota, appeals from a judgment dismissing its action for damages for fraud against Citizens National Bank of Madelia, Minnesota (Bank).[1] We reverse and remand for further proceedings.

At trial, Olsen-Frankman asserted that the Bank made false representations concerning the solvency of a cattle feeder operating under the name of John T. Keim and Sons (Keim), and that as a result Olsen-Frankman was unable to stop payment on two checks totalling over $56,000, which it had issued to Keim to pay for cattle.[2] At the time of the Bank's representations, Keim owed Olsen-Frankman over $100,000 for cattle purchased through it. Having made these representations, the Bank, as holder (not in due course) of the two checks, arranged for their payment by the drawee bank before Olsen-Frankman learned that Keim was insolvent.

Olsen-Frankman sought damages equal to the amount of those checks, plus interest. Notwithstanding that the jury answered special verdicts generally in favor of Olsen-Frankman, the trial court dismissed the action, holding that no damages arose from the fraud because Olsen-Frankman could not have asserted Keim's collateral indebtedness to offset its obligations on the two checks held by the Bank. We examine this ruling in light of the jury's resolution of certain disputed factual issues.

The district court in its unpublished opinion aptly summarized those facts and the history of the litigation as follows:

This controversy arose out of the financial chaos occasioned by the bankruptcy of John Keim. During the early months of 1975, Keim operated a cattle feedlot business [near Madelia, Minnesota] variously under the names of John T. Keim & Sons and G. M. Grain Co., Inc. In August of 1975, an involuntary petition in bankruptcy was filed against Keim and his businesses. Each was adjudicated bankrupt in November, 1975. Shortly thereafter the several of Keim's creditors filed actions against one another attempting to recover the full amount of their respective losses.

1. Jurisdiction in the district court arose from diversity of citizenship of the parties and the requisite amount in controversy. 28 U.S.C. § 1332 (1976). Accordingly, state law governs the substantive issues in this suit. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. As discussed *infra*, Olsen-Frankman made payment for the cattle in two checks, one to John T. Keim and Sons for $28,346.12 and the other in a similar amount ($28,346.13) to G. M. Grain Co., Inc., a corporation substantially owned by Keim.

This case involves the claim of plaintiff [Olsen-Frankman] with regard to a transaction occurring in July, 1975. Plaintiff issued two checks, each for a little more than $23,000, one to John T. Keim [& Sons] and the other to G. M. Grain Co., in payment for cattle sold to plaintiff. These checks were negotiated by Keim to defendant bank [at Madelia, Minnesota]. Defendant had previously done business with Keim and its officers had become aware that Keim's credit was severely overextended. Because of the bank's concern over Keim's financial situation, one of the bank's vice presidents, Clarence Goodburn, telephoned one of plaintiff's officers, David Frankman, to inquire whether the checks would be honored. Frankman replied that they would be honored and inquired whether there was any problems [sic] with Keim's financial condition. Goodburn answered in the negative.

Plaintiff's position at trial was that this response was a false representation and that if the truth about Keim's credit conditions had been told, plaintiff would have stopped payment on the checks and, through set-off of a previous debt of Keim's could have avoided liability on the instruments.

The jury's special verdict found that the bank did make a fraudulent misrepresentation, the bank was a holder of the two checks, the bank was not a holder in due course, plaintiff was damaged in the amount of $56,692.25 and G. M. Grain Co., Inc., was owner of the cattle sold to plaintiff for which the checks were issued.[1]

[1] Another jury finding, not relevant to the disposition of this case, was that a Mr. Pat Pedelty, one of Keim's creditors who ultimately received the proceeds of the two checks, was also not a holder in due course.

Both in their pleadings and in arguing their respective rights before the trial court, the parties approached the issue of whether damages resulted from the Bank's representations by assuming that Olsen-Frankman had stopped payment on the two checks and, thereafter, the Bank sought to collect on them. Thus, the issue became whether Olsen-Frankman could defend against the Bank's claim by asserting a setoff arising out of an indebtedness of over $100,000 owed Olsen-Frankman by Keim.

The applicable Uniform Commercial Code (U.C.C.) section, U.C.C. § 3–306 (Minn.Stat. § 336.3–306 (1974)), reads as follows:

Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) *all defenses of any party which would be available in an action on a simple contract*; and

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (section 3–408); and

(d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party. (Emphasis added.)

Focusing on subsection (b) of this U.C.C. provision, the appellee Bank asserts that the phrase "all defenses of any party which would be available in an action on a simple contract" does not contemplate a defense by way of setoff arising from an independent transaction extrinsic to the instrument. To the contrary, appellant urges that specific provisions of both Minnesota and South Dakota law authorize a drawer of a check to set off against a mere holder the obligations owed to the drawer by the payee. The Minnesota statute which appellant cites reads as follows:

If a thing in action be assigned, an action thereon by the assignee shall be without prejudice to any set-off or defense existing at the time or before notice of the assignment; but this section

does not apply to negotiable paper, transferred in good faith and upon good consideration before due. [Minn.Stat. § 540.-03 (1974).]

We turn now to these conflicting contentions.

## I. Choice of Law.

The appellant contends that the right of setoff to the checks arises under either the Minnesota setoff statute quoted above or a near identical setoff statute in South Dakota (S.D.Compiled Laws Ann. § 15–9–23 (1967)), the place where Olsen-Frankman issued the checks. The district court in its analysis referred to provisions of the U.C.C. enacted in Minnesota and appears to have relied on Minnesota law as controlling.

■ We agree that Minnesota law determines the rights of the appellee as a holder of these instruments because the transfer of the checks to the Bank occurred in Minnesota. *See United States v. Guaranty Trust Co.*, 293 U.S. 340, 345–46, 55 S.Ct. 221, 79 L.Ed. 415 (1934); *Capital Investors Co. v. Executors of the Estate of Morrison*, 484 F.2d 1157, 1160 (4th Cir. 1973), *cert. denied sub nom. Frost v. Executors of the Estate of Morrison*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Restatement (Second) of Conflict of Laws* § 216 (1971). On appeal, the parties have not disputed the choice of law made by the district court.

## II. Setoff in Minnesota Under U.C.C. § 3–306.

■ The crux of the dispute between the parties centers on whether under Minn.Stat. § 336.3–306 [3] a mere holder (the Bank) who sues on a negotiable instrument is liable by way of setoff for a collateral indebtedness owed by the payee-transferor (Keim) to the drawer of the instrument (Olsen-Frankman). An examination of the Minnesota setoff statute, the U.C.C. commentary and pertinent provisions of the predecessor negotiable instruments law, *i. e.*, section 58 of the Negotiable Instrument Law (N.I.L.), demonstrates that in Minnesota, contrary to the rule in some other states,[4] a drawer may offset extrinsic debts owed to him by the payee against his obligations on an instrument to a holder not in due course.

We begin our examination of the right to setoff in Minnesota under U.C.C. § 3–306 by reviewing the history of Minnesota's setoff statute and the prior negotiable instruments law.[5] The provisions of the Minnesota setoff statute originated in the territorial days and have continued as part of the general statutes and revised laws of that state. *See* Minn.Stat. § 540.03 (1974) (corresponds to Rev.Stat. (Terr.), ch. 70, § 28). In 1913, Minnesota enacted provisions of the N.I.L. (Minn.Stat. §§ 335.01–335.80 (1961) (repealed 1965) (originally enacted as 1913 Minn. Laws ch. 272, §§ 1–196)). Minnesota adopted the U.C.C. in 1965; it became effective July 1, 1966. Minn.Stat. § 336.10–105 (1974).

In *Gould v. Svendsgaard*, 141 Minn. 437, 170 N.W. 595 (1919), the Minnesota Supreme Court, citing Minnesota's version of section 58 of the N.I.L.[6] and the setoff statute,[7] held that the maker of a promissory note could assert a setoff claim against a post-maturity transferee where the maker held the claim against the payee at the time the transferee took the note. The N.I.L.

---

3. Identical to U.C.C. § 3–306(b) quoted above, Minnesota's version provides that a person not a holder in due course takes an instrument subject to

 all defenses of any party which would be available in an action on a simple contract[.] [Minn.Stat. § 336.3–306(b) (1974).]

4. *See, e. g., United Overseas Bank v. Veneers, Inc.*, 375 F.Supp. 596 (D.Md.1974) (Maryland setoff statute does not apply to negotiable instruments).

5. Official Comment 3 to U.C.C. § 3–306 makes an historical review particularly relevant. It notes that "[p]aragraph (b) restates the first sentence of the original Section 58 [of the Negotiable Instruments Law]." Minn.Stat.Ann. § 336.3- 306, Official Code Comment 3 (West 1966).

6. Minn.Stat. § 335.221 (1961) (repealed 1965) (corresponds to Gen.Stat. § 5870 (1913)).

7. Minn.Stat. § 540.03 (1974) (corresponds to Gen.Stat. § 7675 (1913)).

section cited in *Gould v. Svendsgaard, supra*, and referred to in Official Comment 3 to U.C.C. § 3–306,[8] provided in relevant part:

> In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. [Minn.Stat. § 335.221 (1961) (repealed 1965) (corresponds to N.I.L. § 58).]

Commenting on *Stegal v. Union Bank & Federal Trust Co.*, 163 Va. 417, 176 S.E. 438, 95 A.L.R. 582 (1934), a leading case discussing the right of setoff under N.I.L. section 58, the court in *United Overseas Bank v. Veneers, Inc.*, 375 F.Supp. 596, 607–08 (D.Md.1974), observed:

> The court [in *Stegal, supra*] further held that section 58 would have no effect at all on the prior law of the state with regard to set-off; in other words, section 58 would not change prior statutes or decisions which stated that prior party set-off was available in a suit on a negotiable instrument by a transferee not a holder in due course. Ample support for these conclusions may be found in Note (a) to section 58 of the N.I.L., which states:
>
>> It is not deemed expedient to make provisions as to what equities the transferee will be subject to; for the matter may be affected by the statutes of the various states relating to set-off and counter-claim. On the question whether only such equities may be asserted as attach to the bill, or whether equities arising out of collateral matters may also be asserted, the decisions are conflicting. In an act designed to be uniform in the various states, no more can be done than fix the rights of holders in due course.[9]

The *United Overseas Bank* opinion held that under U.C.C. § 3–306(b) the right of a drawer to assert a setoff against a trans-feree (not a holder in due course) rested upon the drawer's rights according to state law existing before the enactment of the N.I.L. As already noted, U.C.C. § 3–306(b) intended no substantive change in N.I.L. section 58,[10] and Minnesota allowed setoffs both prior[11] and subsequent[12] to its adoption of the N.I.L.

In the "Minnesota Code Comment" contained in the supplemental notes to Minn. Stat.Ann. § 336.3–306 (West 1966), Professor Stanley V. Kinyon wrote regarding subsection (b):

> This paragraph, subjecting a nonholder in due course to "all defenses of any party which would be available in an action on a simple contract," comprehends such defenses as fraud and misrepresentation, duress, payment and *set-off*, and would not change prior Minnesota law. (Emphasis added.)

Additionally, Professor Kinyon refers to the setoff permitted in the *Gould* case:

> In *Gould v. Svendsgaard*, 141 Minn. 437, 170 N.W. 595 (1919) the defendant was allowed to assert against the transferee-after-maturity a *set-off* good against the payee[.] [Minn.Stat.Ann. § 336.3–306, Minn.Code Comment, Paragraph (b) (West 1966) (emphasis in original).]

In their hornbook on the Uniform Commercial Code, Professors White and Summers comment that section 3–306 "does little more than summarize basic rules of contract law." J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 490 (1972). The authors note that under contract principles set forth in section 167(1) of the *Restatement of Contracts*, all defenses to a contract claim may be asserted against an assignee of a contract except for those defenses based on facts arising after the obligor has notice of

---

8. *See* note 5 *supra.*

9. For further analysis and a comprehensive discussion of the right of setoff under N.I.L section 58, *see Stegal v. Union Bank & Trust Co., supra.*

10. *See* note 5 *supra.*

11. *See Tuttle v. Wilson*, 33 Minn. 422, 23 N.W. 864 (1885).

12. *See Gould v. Svensgaard, supra.*

the assignment.[13] The language of the Minnesota setoff statute clearly adopts this contract principle with regard to setoffs. *See* Minn.Stat. § 540.03 (1974).

■ In summary, the history of the Minnesota setoff statute and negotiable instrument law, the U.C.C. Comment and the views of legal scholars indicate that the obligor on a negotiable instrument may set off against a holder not in due course an existing obligation owed by the obligee on the instrument. Under the setoff statute, the transfer of a negotiable instrument to one not a holder in due course occurs " * * * without prejudice to any set-off or defense existing at the time or before notice of the assignment[.]" Minn.Stat. § 540.03 (1974). Thus, in the present case the Bank took these checks subject to any existing setoff rights of Olsen-Frankman.

The Bank's argument to the contrary relies upon language in *Bank of Wyandotte v. Woodrow*, 394 F.Supp. 550 (W.D.Mo.1975), which rejected any right of setoff against a holder not in due course arising from collateral transactions between the parties to the instrument. Judge Oliver in *Wyandotte* construed the Code term "defenses" (*see* U.C.C. § 3–306(b)) to mean technical defenses to the instrument, not setoffs arising from separate transactions with the check payee. He observed that under the applicable state law of Missouri one not a holder in due course is

> * * * subject only to such infirmities and defenses as are connected with the (instrument) itself and not such as grow out of separate and distinct transactions between the original parties. [394 F.Supp. at 556, *quoting Glaus v. Gosche*, 118 S.W.2d 42, 45 (Mo.App.1938).]

That conclusion, although quite appropriate, does not constitute persuasive authority here because Minnesota, unlike Missouri, statutorily allows a setoff. *See* Minn.Stat. § 540.03 (1974).

We conclude that the Uniform Commercial Code does not bar the assertion of a statutory setoff claim against a transferee of an instrument who does not qualify for the protections afforded a holder in due course. Accordingly, contrary to the district court, we hold that under Minnesota law appellant Olsen-Frankman might have asserted a right of setoff in a suit on these checks by appellee Bank, and to the extent that Olsen-Frankman can sustain such a setoff, it is entitled to damages against the Bank attributable to the latter's fraudulent misrepresentation.

### III. The Validity of the Setoff Claim.

As an affirmative defense, the Bank asserted in its pleadings that Olsen-Frankman's right of setoff, if any, applied only to the check for $28,346.12 issued to John T. Keim & Sons because Olsen-Frankman's records showed no indebtedness owed by G. M. Grain Co., the payee of the second check.

■ This argument may be well taken. The right of setoff exists only as to "mutual" debts. *See Henderson v. Northwest Airlines, Inc.*, 231 Minn. 503, 43 N.W.2d 786 (1950). Here the record shows mutual debts only between Olsen-Frankman on the one hand, and John T. Keim & Sons on the other.

On appeal, Olsen-Frankman does not dispute this mutuality requirement; rather, it contends that the evidence establishes that G. M. Grain Company and John Keim & Sons constituted a single entity. According to this theory, the $100,000 indebtedness constitutes a debt of Keim and/or G. M. Grain Company as one entity, and therefore mutuality exists in fact with respect to both payees.

Appellant's theory that John T. Keim & Sons and G. M. Grain Company were one

---

**13.** *Restatement of Contracts* § 167(1) (1932) provides:

> An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all *set-offs* and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and *set-offs* are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor. (Emphasis added.)

and the same seems to have first surfaced in its reply brief. At trial, Olsen-Frankman did not advance this theory but rather contended that Keim owned the cattle. Olsen-Frankman presented evidence that in payment for livestock purchased on July 17, 1975, it contemplated the issuing one check to Keim for the cattle. However, at the request of Gary Keim, a son of John Keim who brought in the loads of cattle, it issued two checks and split the proceeds between Keim and G. M. Grain Company.[14] Appellee Bank introduced evidence at trial indicating that, on the contrary, G. M. Grain owned the cattle. The jury by answer in the special verdict determined that on July 17, 1975, G. M. Grain Company owned the cattle in question.

Whether under the pleadings and trial record the appellant should now be permitted to advance the theory that Keim and G. M. Grain constituted a single entity, thereby establishing complete mutuality of indebtedness between Olsen-Frankman and both payees on the two checks in question, is a matter that we do not address. This question, as well as the substance of the claim if allowed, should be considered in the first instance by the district court.

On the record before us, appellant has demonstrated a right of setoff, hence a claim of damages for fraud, only with respect to the check made out to John T. Keim & Sons for $28,346.12. This right remains subject to certain other defenses asserted by the Bank.

IV. *Remaining Defenses.*

· Appellee Bank has advanced two legal defenses which, it argues, support the trial court's dismissal of this action: (1) pursuant to a security agreement with G. M. Grain Company, the Bank possessed an interest in the checks superior to that of Olsen-Frankman; and (2) appellant's assertion of a setoff in this case would create a voidable preference under the bankruptcy laws.

The district court did not reach these issues, having determined that no damages would lie for fraud because a stop payment order by Olsen-Frankman could not relieve it of liability to the holder of its checks. In our view, these unresolved issues should be addressed initially by the district court on remand.

Accordingly, we reverse the holding of the district court, vacate its judgment of dismissal, and remand for further proceedings consistent with this opinion. Appellant is entitled to costs on this appeal.

14. Appellant's theory that Keim owned all the cattle circumvents the mutuality problem regarding G. M. Grain Company. As a gratuitous assignee of one-half of Keim's interest in the cattle sale proceeds, G. M. Grain Company would have taken the check subject to Olsen-Frankman's claim against Keim. *See* Minn. Stat. § 540.03 (1974).